United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| KRYSTAL WALLACE, | Case No. 18-cv-05221-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| SHARKNINJA OPERATING, LLC, | [Re: ECF 48] |
| Defendant. | |

This is a putative consumer class action concerning a ubiquitous kitchen appliance, the blender. The blender at the center of this suit is not your average or traditional blender, however. Whereas other blenders have a single set of blades at the bottom of the pitcher, the blender that Plaintiff Krystal Wallace purchased is equipped with a "Stacked Blade Assembly" comprising six blades mounted along a vertical column that sits in the center of the pitcher. Wallace injured her hand while using the blender, wherefore she brings suit against its maker, Defendant SharkNinja Operating, LLC ("SharkNinja").

Presently before the Court is SharkNinja's second motion to dismiss. ECF 48 ("Mot."). Despite Wallace's amendments in response to the Court's grant of the first motion to dismiss, SharkNinja asserts that the operative Second Amended Complaint ("SAC") remains deficient. SharkNinja's motion is GRANTED IN PART and DENIED IN PART. The Court's detailed rulings and the reasons for them are set forth below.

## I. BACKGROUND

The following facts are drawn primarily from the SAC, ECF 45, which the Court must treat as true at the pleading stage. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

### A.    The Alleged Defect

Most consumers are familiar with blenders, which have been fixtures of household kitchens for decades.  Used to mix and pulverize foods using sharp blades, blenders typically consist of a motorized base and a blending pitcher.  In a traditional blender, there is a single set of short blades locked to the bottom of the pitcher.  SAC ¶ 30.  SharkNinja manufactures a line of blenders that employ a unique blade arrangement (the "Ninja Blenders"), which purports to deliver exceptional blending performance.  *Id.* ¶ 4.  As shown in the image below, the Ninja Blenders have a "Stacked Blade Assembly": multiple blades mounted along a vertical column that sits in the center of the pitcher and extends the entire height of the pitcher.  *Id.* ¶¶ 1, 31.  In the case of Wallace's particular model, the Ninja Professional Blender BL660 (the "BL660"), there were six blades.  *Id.* ¶¶ 16, 31.  According to SharkNinja, the Stacked Blade Assembly "allows you to crush ice faster and blend ingredients smoother than other blenders.  *Id.* ¶ 31; *see also id.* ¶ 17.



*Id.* ¶ 4.

Of particular relevance here, the Stacked Blade Assembly is not permanently attached to the pitcher or the pitcher's lid, nor does it lock into place.  *Id.* ¶¶ 3, 4.  The parties agree that is by design.  Indeed, Plaintiff cites a 2015 *Consumer Reports* article stating that "Ninja is the only manufacturer that uses a blade assembly that isn't locked into the container during use" and that its "drawback is that the knife-like assembly isn't anchored in any way, to the container."  *Id.* ¶ 3.

According to Wallace, however, the Ninja Blenders have "one or more design defects whereby the Stacked Blade Assembly improperly dislodges *while blending*" (the "Defect" or "Staked Blade Defect"). *Id.* ¶ 2 (emphasis added). That is, the parties agree that although the Stacked Blade Assembly does not lock into the pitcher, there is a "system intended to keep the Stacked Blade Assembly centered and in place during normal operation." ECF 52 ("Opp.") at 1; *see* Mot. at 1. The SAC does not describe this system, but Wallace does not appear to dispute SharkNinja's description of it: "[T]he bottom [of the blade assembly] is seated on a drive gear at the base, and the top fits into a receptacle in the lid, which locks onto the pitcher." Opp. at 1 (quoting Mot. at 1). At the hearing, moreover, SharkNinja brought a BL660 unit and showed these features to the Court. *See* ECF 66 ("Second MTD Tr.") at 11; ECF 61 (stipulated motion to allow the demonstration). The SAC alleges that, due to the Defect, the system malfunctions and the Stacked Blade Assembly comes dislodged from its intended position during blending. Wallace believes the Defect "has a greater propensity to occur while attempting to blend solid ingredients like ice and frozen fruit, the exact purpose for which the blender is advertised." SAC ¶ 31. At the same time, the Defect is allegedly "inherent in each of the Ninja Blenders and is present at the time of sale." *Id.* ¶ 12.

Plaintiff alleges several consequences that may result when the Stacked Blade Assembly comes dislodged. SAC ¶ 2. For instance, the Stacked Blade Assembly can "crack[], shatter[], or otherwise damage[e] the blending pitcher." *Id.* ¶ 2. In addition, consumers have only two options for repositioning the Stacked Blade Assembly: They can either "blindly" "reach their hand into the partially blended mixture" to grab ahold of it, or pour it out along with the blended mixture. *Id.* ¶¶ 8-9. Both options allegedly "expose[] consumers to unexpected and sudden direct contact with the sharp blades," *id.* ¶ 2: If the user chooses the former option, she may touch the blade and cut herself; if the user chooses the latter option, the blade may "suddenly fall out" and cut the user, *id.* ¶ 32.

Turning to Wallace's particular experience, Wallace purchased her BL660 blender on or around March 14, 2018 from Amazon.com, a SharkNinja authorized retailer. SAC ¶ 16. Wallace alleges that she was "forced to stop using" her blender "after only a few months" due to the

3

United States District Court
Northern District of California

Defect. *Id.* ¶ 19. Specifically, she says, "on several occasions, the Stacked Blade Assembly came loose during normal blending with the lid properly secured, causing the Blade Assembly to spin unsecured around the blending pitcher." *Id.* When that occurred, Wallace had to "quickly turn the blender off, remove the lid, carefully place her hand inside the filled blender to locate the Blade Assembly, and attempt to return the Blade Assembly to the center of the pitcher." *Id.* On one of those instances, the Stacked Blade Assembly cut Wallace's hand as she was attempting to re-position it. *Id.*

Wallace says that, prior to buying the blender, she "saw, and relied upon, pictures and descriptions of the Ninja Blender provided by SharkNinja that each depicted the stacked blade assembly secured inside the blending pitcher." SAC ¶ 17. As a result, she "did not know, and had no reason to know, that the Stacked Blade Assembly separates from the blender unit and suffers from the Stacked Blade Defect" when she made her purchase." *Id.* Wallace further alleges that because user safety was an important factor in her purchasing decision, *id.* ¶ 17, she would not have purchased the Ninja Blender if she knew of the Defect and of the fact that the Stacked Blade Assembly did not lock in place inside the pitcher, *id.* ¶ 20. And if the Ninja Blenders "no longer exhibited the Stacked Blade Defect," Wallace would consider purchasing one in the future. *Id.* at 21.

### B.     Complaints and "Recall"

According to Plaintiff, SharkNinja has long been aware of the Defect in its Ninja Blenders. Specifically, Plaintiff believes that, based on "pre-release testing data, early consumer complaints, high failure rates and replacement part sales data, and other internal sources," SharkNinja has known about the Defect "since at least 2012." SAC ¶ 38. The SAC provides no detailed allegations about any of these information sources, other than consumer complaints. The SAC does contain a number of complaints filed by consumers with the Consumer Product Safety Commission ("CPSC") and provided to SharkNinja by CPSC. *Id.* ¶¶ 36, 40. Plaintiff asserts that at least some of these complaints describe the Defect at issue and thus made SharkNinja aware of the Defect. *Id.* ¶ 40. For instance:

5/8/2013 - The consumer stated that the device has a whirling blade.

4

His wife put the blade on but it was not secure. When his wife turned the device on, the blade flew off of the axis. It chipped off bits of the plastic from the inside of the container. Bits of the plastic was in the smoothie. This was the first time that the product had been used. The consumer considers this to be an unsafe product. (Ninja Master Prep)

*Id.* ¶ 36(c).

Plaintiff also believes it is significant that in 2015, after 53 consumer complaints to the CPSC, SharkNinja issued a revised safety warning for the BL660 series of blenders. SAC ¶ 39. The revised warning is that "the blender poses a laceration risk if consumers pour or invert the pitcher after removing the lid while the loose stacked blade assembly is still inside the pitcher." *Id.* The parties refer to this action as the "Recall," though SharkNinja did not instruct "retailers to stop selling the products" or "consumers to stop using the product." *Id.* Plaintiff alleges that the Recall was "a result of the Defect," but also that the revised safety warning "never addressed" the "issue of the blades dislodging while blending"—i.e., the Defect. *Id.*

### C. The Instant Suit

Based on the foregoing, Plaintiff Wallace sues Defendant SharkNinja for knowingly selling the defective Ninja Blenders to consumers, in violation of various state and federal laws. Wallace filed the original Complaint on August 24, 2018 and a first amended complaint ("FAC") on October 3, 2018. ECF 1, 18, 20. SharkNinja moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF 23, and the Court granted that motion with leave to amend, ECF 47. Wallace has amended her pleading, resulting in the now-operative SAC. ECF 45.

Like the FAC, the SAC contains five counts: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq* ("Count 1"); (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("Count 2"); (3) breach of implied warranty under the Song-Beverly Consumer Warranty Act ("Count 3"); (4) breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2303 *et seq.* ("Count 4"); and (5) unjust enrichment ("Count 5"). Wallace brings all of these claims on behalf of herself; she also brings claims on behalf of various proposed classes. First, the Nationwide Class consists of:

All individuals in the United States who purchased one or more Ninja Stacked Blade Blenders from four years prior to the filing of the initial

United States District Court
Northern District of California

complaint through the date of certification (the "Nationwide Class").

SAC ¶ 47. Wallace also asserts three subclasses: the "California Sub-Class" of all members of the Nationwide Class who live in California; the "CLRA Sub-Class" of all members of the California Sub-Class who are "consumers" under Cal. Civ. Code § 1761(d); and the Implied Warranty Sub-Class of all members of the Nationwide Class who purchased their blender in California. *Id.* Count 1 is brought on behalf of the CLRA Sub-Class, *id.* ¶ 55; Count 2 is brought on behalf of the Nationwide Class or, in the alternative, the California Sub-Class, *id.* ¶ 70; Count 3 is brought on behalf of the Implied Warranty Sub-Class, *id.* ¶ 84; Count 4 is brought on behalf of the Nationwide Class or, in the alternative, the California Sub-Class, *id.* ¶ 94; Count 5 is brought on behalf of the Nationwide Class or, in the alternative, the California Sub-Class, *id.* ¶ 106.

As relief, Wallace seeks, *inter alia*, "[a]n order enjoining Defendant from further deceptive advertising, sales, and other business practices," SAC ¶ 110(b); "compensatory, exemplary, and statutory damages, including interest," *id.* ¶ 110(d); and an order requiring SharkNinja to "disgorge" "all or part of the ill-gotten profits it received" from selling the Ninja Blenders or "make full restitution to Plaintiff and Class Members," *id.* ¶ 110(g).

Defendant SharkNinja now moves to dismiss the entire SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In addition, because Plaintiffs' CLRA and UCL causes of action are grounded in fraud, the SAC must also satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (holding that claims for false or misleading advertising under the CLRA, FAL, and UCL are "grounded in fraud" and applying Rule 9(b)). To satisfy Rule 9(b), a plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction," *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original); she must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). That is, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). However, other circumstances—such as knowledge—"need not be pled with particularity." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

In evaluating the complaint, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). At the same time, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

## III.    REQUESTS FOR JUDICIAL NOTICE

Generally, a motion to dismiss under Rule 12(b)(6) must rely solely on the contents of the pleadings. *See* Fed. R. Civ. P. 12(d). One exception to this general rule is that a court may consider "matters of judicial notice" without converting a motion to dismiss into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). SharkNinja makes two requests for judicial notice in connection with its motion to dismiss the SAC. ECF 57; ECF 24

(renewed at Mot. at 2 n.1). Plaintiff objects to one of these requests. ECF 58.

Without weighing in on the merits of Plaintiff's objection, the Court declines to take judicial notice. A court is not required to take judicial notice of judicially noticeable information. *See Carson v. Bank of Am. NA*, 611 Fed. App'x 379, 380 n.1 (9th Cir. 2015) (declining to take judicial notice of the requested documents "because the documents are not relevant or necessary to the determination of this case"). Here, the material of which SharkNinja requests the Court take judicial notice is not necessary to the Court's resolution of the motion to dismiss, and the Court does not rely upon it. The Court therefore DENIES both requests without prejudice.

## IV. DISCUSSION

Defendant SharkNinja moves to dismiss the entire SAC. Below, the Court considers SharkNinja's arguments as to the CLRA claim, the claims for breach of implied warranty, the UCL claim, and the unjust enrichment claim, in that order. The Court then addresses the prayers for equitable relief and the class allegations.

### A. CLRA Claim

Count 1 is brought under the CLRA, which prohibits specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Wallace argues that SharkNinja's failure to disclose the Defect before Wallace's purchase violates the CLRA by: representing that the Ninja Blenders had "characteristics" and "benefits" that they do not have, *id.* § 1770(a)(5); representing that the Ninja Blenders "were of a particular standard, quality, or grade" when they were of another," *id.* § 1770(a)(7); and advertising the Ninja Blenders "with intent not to sell them as advertised," *id.* § 1770(a)(9). SAC ¶ 23; *see also* Opp. at 1.

Wallace's Opposition makes clear that she is asserting a theory of fraudulent omission and not a theory of affirmative misrepresentation. Opp. at 9. An actionable fraudulent omission is either an omission that is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). Wallace asserts the latter—i.e., that SharkNinja has a duty to

disclose the "defects and design flaws in the Stacked Blade Assembly," which pose safety concerns. Opp. at 10; *see* SAC ¶ 62. The omitted fact, in other words, is the existence of the Defect.

"California courts have generally rejected a broad obligation to disclose." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). There are at least two key limits on the duty to disclose under the CLRA. First, a defendant has "no duty to disclose facts of which it was unaware" at the time of the sale. *Wilson*, 668 F.3d at 1145 (quoting *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010)). And indeed, the parties agree that SharkNinja only has a duty to disclose the Defect if it knew of the Defect at the time of sale. *See* Opp. at 10; Mot. at 15-16.

Second, the CLRA proscribes only failures to disclose *material* facts. *Gutierrez v. Carmax Auto Superstores California*, 19 Cal. App. 5th 1234, 1258 (2018). The Ninth Circuit has held that under California law, an omitted fact is material only if it relates to a "safety issue." *Wilson*, 668 F.3d at 1141-42. In other words, in the absence of any affirmative representation, manufacturers do not have a duty to disclose defects that do not pose safety concerns. *Id.*

In sum, then, "[t]o state a claim for failing to disclose a defect, a party must allege (1) the existence of a design defect;" (2) that the alleged defect causes an "unreasonable safety hazard"; (3) "that the manufacturer knew of the defect at the time a sale was made." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (considering, among others, a CLRA claim). Accordingly, Defendant attacks the sufficiency of the SAC on the grounds that Wallace has not plausibly pleaded (1) the existence of the Defect; (2) that the Defect posed an "unreasonable safety hazard"; or (3) SharkNinja's knowledge of the Defect prior to Wallace's purchase. Although the Court rejects the first and second challenges, the Court agrees as to the third and therefore must DISMISS Count 1, albeit with LEAVE TO AMEND.

### i.    Existence of a Defect

Earlier versions of Wallace's complaint were not clear as to what constituted the alleged defect. *See* ECF 41 ("First MTD Tr.") at 4, 16-17. That problem has now been remedied. The Defect, as alleged in the SAC and confirmed in the Opposition, is that "the Stacked Blade

Assembly improperly dislodges *while blending*." SAC ¶ 2 (emphasis added); *see also* Opp. at 1

("[T]he Ninja Blenders were defective in that the system intended to keep the Stacked Blade

Assembly centered and in place during normal operation, malfunctions."). The Opposition further

confirms that "Plaintiff is not alleging that a locked blade assembly is simply a safer alternative to

the Ninja Blenders' design," but rather that "the system designed to keep the Stacked Blade

Assembly secure malfunctions during normal operation of the blender." Opp. at 6. SharkNinja

concedes that, if plausibly alleged, this would constitute a "defect" and not simply a wish for a

better product design (which is not actionable under the consumer fraud laws, *see generally*

*Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1285-88 (C.D. Cal. 2016)). First MTD Tr. at

13. The Court agrees.

SharkNinja further objects that Wallace has not alleged facts making the Defect plausible.

Mot. at 10. First, SharkNinja faults Wallace for not identifying the cause of the defect with greater

specificity. Specifically, SharkNinja contends that Wallace must posit what caused the Stacked

Blade Assembly to dislodge; having failed to do so, she has not alleged a "defect," only "the

consequences" of the defect. Mot. at 11. It is true that courts have sometimes rejected allegations

that do not "identify the alleged defect with particularity" for failing to meet Rule 9(b). *Sciacca v.*

*Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal. 2019); *see also Yagman v. Gen. Motors Co.*, No.

CV-14-4696-MWF AGRX, 2014 WL 4177295, at *3 (C.D. Cal. Aug. 22, 2014). In *Sciacca*, for

instance, the plaintiff alleged that the screens of purchasers' Apple Watches "were detaching,

cracking, or shattering," but plaintiff also alleged that this "could have been the result of various

possible causes, including consumer misuse." 362 F. Supp. 3d at 797. In *Yagman*, the plaintiff

merely alleged "that his vehicle's engine stopped working" and "his vehicle experienced a total

electrical failure," without alleging any particular defect. 2014 WL 4177295 at *3. These and the

other cases cited by Defendant stand for the proposition that a plaintiff cannot "only allege[] an

injury," which fails to put a defendant on notice of the defect at issue. *Id.* At the same time, a

plaintiff is not required to identify the precise cause of a defect. *See, e.g.*, *Hardt v. Chrysler Grp.*

*LLC*, No. SACV1401375SJOVBKX, 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015)

("Plaintiffs' allegation that 'the Manual Transmission contains one or more design and/or

10

manufacturing defects,' combined with a description of the symptoms of the alleged defect . . . provides Chrysler sufficient notice of the defect at issue.").  After all, it is typically difficult for a plaintiff to discern the mechanical workings of a product at the pleading stage.

The Court finds that the SAC does more than merely allege an injury.  Wallace alleges that the mechanism holding the Stacked Blade Assembly in place during blending is flawed, resulting in the Stacked Blade Assembly coming dislodged.  Having pointed SharkNinja to the defective component of the blender, Wallace need not plead whether "the shaft is not quite long enough," or "the materials from which [the shaft is] made were not strong enough," or any particular cause of the defect.  Mot. at 11.  Unlike the *Sciacca* plaintiff, moreover, Wallace has also alleged that the lid was "properly secured," SAC ¶ 19, which suggests her injury was not the result of misuse.  Under these circumstances, Wallace's allegations are sufficiently specific to give SharkNinja notice under Rule 9(b).

Second, SharkNinja contends that allegations in the SAC "actually undermine" her claim that the Stacked Blade Assembly comes dislodged because, despite quoting many customer complaints, few of these complaints involved the Defect.  Mot. at 12.  If the Defect truly exists, the argument goes, "then quite a few people should have experienced it," not just Wallace.  *Id.* But as discussed at the hearing, these customer complaints are not—and indeed cannot be— offered to establish the fact of the incidents described therein; they are only offered to establish knowledge on the part of the Defendant.  ECF 66 ("Second MTD Tr.") at 6.  Hence, the number of customer complaints reporting the Defect does not affect the plausibility of Wallace's allegation that the Defect occurred.

Finally, SharkNinja argues that if Wallace had in fact experienced the Defect, her blender would show some signs of "damage to the inside of the pitcher."  Mot. at 12.  Yet, according to SharkNinja, the photos of Wallace's blender in the SAC "show no signs" of such damage.  Mot at 13 (citing SAC at 11).  At the pleading stage, however, the Court cannot say that either proposition is true.  That is, it is not implausible that the Defect might not visibly damage the inside of the pitcher.  Plaintiff is entitled to offer evidence that, for instance, the pitcher is made of scratch-resistant plastic.  Nor are the photos so unambiguous as to foreclose the possibility that

Wallace's blender was actually damaged.

Thus, despite Defendant's arguments to the contrary, the Court is satisfied that Wallace has plausibly alleged the existence of the Defect.

### ii. Existence of an Unreasonable Safety Hazard

Defendant next argues that, even if Wallace has plausibly pled the existence of the Defect, she has not alleged that it poses an "'unreasonable' safety hazard that a manufacturer might have a duty to disclose." Mot. at 17. SharkNinja does not dispute that, in general, a risk of laceration is an unreasonable safety hazard. *See Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *14 (C.D. Cal. Oct. 3, 2014) (defining an "unreasonable risk to safety" as "a risk of physical injury"). Instead, SharkNinja contends that the alleged Defect "merely exacerbates the normal and expected dangers" inherent in a sharp blade assembly, that those dangers can be avoided by "follow[ing] directions" and "exercising common sense and prudence," and that the Defect therefore "does not pose 'unreasonable' risk." *Id.* at 17-18.

Defendant is correct that, pursuant to the Ninth Circuit's interpretation of California law, "the standard is one of an 'unreasonable' safety risk." *Williams*, 851 F.3d at 1029. Though the Ninth Circuit has not given much content to that standard, it has said that "the nature of the alleged defect as being primarily one of accelerated timing rather than the manifestation of a wholly abnormal condition weighs against its characterization as 'unreasonable.'" *Id.* For that reason, the court rejected a purported defect that merely "accelerate[d] the normal and expected process of corrosion in outboard motors" used in boats. *Id.* Based on *Williams*, this Court previously disallowed consumer fraud claims alleging that an automatically-closing car door was "defective because it does not have sensors to detect fingers in the car doors before activating." *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *1 (N.D. Cal. Apr. 13, 2017). The Court held that not only had the plaintiff failed to allege a "defect," the purported defect did not pose an unreasonable safety risk because "[s]lamming one's finger in a car door . . . is an anticipated risk of using any door." *Id.* at *9. In other words, the risk posed by the purported defect was not "different from the normal risk of using a car door." *Id.*

The present situation is quite different. Plaintiff has alleged that the Defect creates a risk

of laceration that does not exist when the Stacked Blade Assembly is operating as intended. Take for instance Plaintiff's claim that consumers have only two options for repositioning the Stacked Blade Assembly. They could, like Wallace did, "blindly" "reach their hand into the partially blended mixture" to grab ahold of it and in so doing potentially cut themselves. SAC ¶¶ 8-9. SharkNinja counters that "users are specifically instructed to remove the assembly by the tip of the shaft, not by 'blindly grabbing' at the blades lower down." Mot. at 13. But Plaintiff's point is that because the Stacked Blade Assembly is askew and the pitcher is full of mixture, the user may not be able to see the portion of the shaft where it is safe to grasp. This is not implausible. And although SharkNinja asserts that the tip of the shaft could not be hidden if a user complied with the maximum fill line, Mot. at 13 (citing photos of the BL660), the Court cannot make that factual determination at the motion to dismiss stage.

Alternatively, the consumer could take the lid off and pour the blade out along with the blended mixture. SAC ¶ 8-9. Plaintiffs alleges that doing so also creates a potential for laceration in that the Stacked Blade Assembly may tumble out in a sudden or unpredictable manner, which SharkNinja's 2015 Recall recognizes. *See id.* ¶ 32. Thus, whereas users would ordinarily be able to easily avoid touching a blade, "consumers' direct exposure to the Blade Assembly is unavoidable" when the Defect occurs. *Id.* ¶ 8.

Plaintiff also alleges that when the Stacked Blade Assembly becomes dislodged, it may "crack" or "shatter" the blender. SAC ¶ 2. That is certainly a "wholly abnormal condition," *Williams*, 851 F.3d at 1029, that poses a risk of physical injury.

In sum, the Court believes Plaintiffs have plausibly alleged that the Defect poses an unreasonably safety hazard.

### iii. Knowledge

Nevertheless, on the third requirement—SharkNinja's knowledge of the Defect—the SAC falls short. Again, the parties agree that Wallace must plausibly allege that SharkNinja was aware of the Defect at the time of her purchase. Opp. at 10; Mot. at 15-16. The SAC alleges, on information belief, that SharkNinja "knew about the Stacked Blade Defect through sources not available to consumers, including pre-release testing data, early consumer complaints, high failure

rates and replacement part sales data, and other internal sources, including warranty data and private messages via social media and call places to customer support." SAC ¶ 38. SharkNinja contends that this allegation is conclusory and unsupported by specific facts, and thus insufficient to give rise to a reasonable inference that SharkNinja had pre-sale knowledge of the alleged Defect. Mot. at 16.

As noted above, "merely conclusory" allegations are not entitled to the presumption of truth on a motion to dismiss. *In re Gilead*, 536 F.3d at 1055. As SharkNinja correctly points out, the only facts Plaintiff includes to support her allegation of knowledge are customer complaints; Plaintiff does not allege any details regarding the "pre-release testing data," "high failure rates" "replacement part sales data," or "other internal sources." Although courts have allowed litigants to plead knowledge based solely on customer complaints, *see, e.g.*, *Williams*, 851 F.3d at 1028; *Kowalsky v. Hewlett–Packard Co.*, 771 F. Supp. 2d 1138, 1145 (N.D. Cal. 2010), *vacated in part on other grounds by* 771 F.Supp.2d 1156 (N.D. Cal. 2011), the problem here is that none of the customer complaints at hand appear to involve the Defect at issue.

Wallace points the Court to five complaints. Opp. at 2. Turning first to SAC ¶¶ 36(a), (d), (e), and (n), those complaints state:

> (a) 10/10/2012 - i was blending up some frozen strawberries to make a smoothie when all of a sudden the pitcher cracked and popped in my face and all of the mixture was on me and my walls countertop and everywhere.

> (d) 1/28/2015 – I was using my Ninja Professional Blender (Model BL660) to blend frozen fruit and milk. This blender was purchased on or around August 2014 from BJ's Wholesale Club and was being used as it has been each day since purchasing. After blending for approximately 10 seconds, the right side of the blender exploded out, and shot about 8 feet across my kitchen landing next to the table where my 2 children were eating breakfast. There were 2 separate pieces that were approximately 2" and 4", with razor sharp edges. The contents of the blender were sprayed across my kitchen out of this opening. Needless to say, I am EXTREMELY concerned about this product and have contacted Ninja twice regarding this matter. I have not yet heard back from their claims department. I took several pictures of the blender following the incident that can be provided if necessary. (Ninja Professional Blender)

> (e) 2/17/2015 – I was using my Ninja Professional blender. I mixed the pancake batter and was unable to remove the top. I tried

several grippers in order to remove it and it wouldn't bufge [sic]. I sat it upright on the counter and turned to do something else. All of a sudden there was a loud bang. The top flew off and went about 12 feet. The top contains the very sharp mixing blades and fortunately it did not fly in my direction or hit someone. The blades and force could have killed a child, pet or severely cut someone. Batter flew everywhere. I know that the lid was on straight. I have used this to mix this batter many times. I feel this is a great safety hazard. I did call the company about this incident but they seem to only be interested in settling a claim for damages. I do not feel that is an issue, but product safety is the issue. (Ninja Professional Blender 900W)

(n) 2/22/2018 - I was Using my Nutri Ninja, Blending a banana and a avocado, the Nutri Ninja exploded, and my left fingers and hand went down on the blades causing severe injuries to my fingers and hand, … my concerns are why is the nitri ninja still in the stores, I did not know and was not aware that there was a recall and if so why are they still being shipped out for sell, when they are causing severe injuries (Ninja Professional BL450)

Putting aside any other potential deficiencies in these complaints, they do not describe the Defect at issue. In each, it is simply alleged that an explosion occurred; there is no reference to the Stacked Blade Assembly coming dislodged. Furthermore, in complaint (c), the blender does not appear to have been blending at the time of the "loud bang"; rather, the user appears to have finished mixing the pancake batter. These vague customer complaints—although suggestive of concerning problems—are each too different in content to establish SharkNinja's knowledge of the Defect. Just as a plaintiff must allege a defect and not an injury, *see supra* Part IV.A.i, a defendant must have knowledge of the specific defect alleged, not a general problem with the product at issue. *See, e.g.*, *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. August 1, 2017) (technical service bulletin regarding "oil loss" in vehicles did not establish knowledge of the alleged Low-Tension Oil Ring defect).

The only complaint that specifically refers to the Stacked Blade Assembly becoming dislodged is SAC ¶ 36(c):

5/8/2013 – The consumer stated that the device has a whirling blade. His wife put the blade on but it was not secure. When his wife turned the device on, the blade flew off of the axis. It chipped off bits of the plastic from the inside of the container. Bits of the plastic was in the smoothie. This was the first time that the product had been used. The consumer considers this to be an unsafe product. (Ninja Master Prep)

Defendant argues that this customer complaint is insufficient for two reasons. First, SharkNinja

points out that even if an "unusually high volume of complaints" may support an inference of knowledge, as in *Williams*, 851 F.3d at 1028, a single customer complaint cannot. Mot. at 17. Some courts certainly have drawn that line. *E.g.*, *Wildin v. FCA US LLC*, No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986, at *4 (S.D. Cal. June 19, 2018) (A "single pre-purchase consumer complaint on pacificaforums.com does not itself create a plausible claim that Defendant knew of the Stalling Defect at the time of the Wildins' purchase."); *Sloan*, 2017 WL 3283998 at *7 (finding as significant plaintiff's failure to allege that "81 complaints posted over the course of seven years" was an "unusually high number of complaints"). This Court need not reach this issue, though, because the customer complaint at SAC ¶ 36(c) does not involve the blender used by Wallace. It is undisputed that Wallace purchased and used a BL660, not a "Ninja Master Prep." Although Wallace is entitled to allege that these models are substantially similar, *cf. White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002) ("A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect."), she has not done so. Without allegations as to the similarity of the products, the Court cannot infer knowledge of a defect in the BL660 that Wallace purchased from a complaint concerning the Ninja Master Prep.

Nor does the 2015 Recall establish SharkNinja's knowledge of the Defect, *see* Opp. at 11. As the SAC itself concedes, the 2015 Recall "never addressed" the "issue of the blades dislodging while blending"—i.e., the Defect. SAC ¶ 39.

Finally, at the December 5, 2019 hearing, Wallace's counsel asserted that a plaintiff may make allegations of "additional knowledge information that would be within Defendant's possession"—such as "testing data," "high failure rates." and "replacement part sales data," SAC ¶ 38—upon information and belief alone. Second MTD Tr. at 26. But none of the cases Wallace pointed to stands for that proposition. *See Wildin*, 2018 WL 3032986, at *4; *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2016 WL 6441518, at *7 (S.D. Cal. Nov. 1, 2016); *Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP MANX, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013). On the contrary, in *Victorino*, the district court held that "general allegations that the defendant had 'access to aggregate information and data regarding the risk' [were] speculative."

16

*Id.* at *7.  The court only permitted the case to go forward because there was "more than one indication of knowledge," including technical service bulletins and customer complaints.  *Id.* at *9.  More importantly, in *Wilson*, the Ninth Circuit found that the plaintiffs' allegation that Hewlett-Packard had pre-sale knowledge of an alleged computer defect because it had "access to the aggregate information and data regarding the risk of overheating" was "speculative and [did] not suggest how any tests or information could have alerted HP to the defect."  668 F.3d at 1146-47.

The Court thus concludes that the SAC has not sufficiently pled SharkNinja's knowledge of the alleged Defect.  The Court will grant Plaintiff leave to amend to remedy this flaw.  In this Circuit, leave ordinarily must be granted unless one or more of the following factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  With regard to the third factor, the Court recognizes that Plaintiff has already had an opportunity to amend her pleadings following the Court's first dismissal order.  The Court previously told Plaintiff that she needed "a clear allegation of knowledge, at the time of sale, of the defect" and that her pleading did not adequately address that requirement.  First MTD Hearing at 18-19.   However, the Court did not identify the specific deficiencies with the cited customer complaints, and so will allow Plaintiff an opportunity to address them.

Accordingly, Count 1 is DISMISSED WITH LEAVE TO AMEND.

### B.    Claims for Breach of Implied Warranty

On the other hand, Wallace's claims for breach of implied warranty may proceed.  Wallace brings two claims for breach of implied warranty: Count 3, under California's Song-Beverly Consumer Warranty Act, and Count 4, under the federal Magnuson-Moss Act.  SAC ¶¶ 83-104.  "The substantive elements are the same under the Song-Beverly Consumer Warranty Act and Magnuson-Moss Act."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009).  Although the Magnuson-Moss Act creates a separate federal cause of action for breach of an implied

warranty, it directs courts to state law to determine the meaning and scope of the implied warranty. *See* 15 U.S.C. § 2301(7). Naturally, the state law Wallace appeals to is the Song-Beverly Consumer Warranty Act. The Song-Beverly Consumer Act creates "an implied warranty of merchantability" whereby the seller guarantees that consumer goods meet each of the following conditions: (1) "pass without objection in the trade under the contract description"; (2) are "fit for the ordinary purposes for which such goods are used"; (3) are "adequately contained, packaged, and labeled"; and (4) "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code §§ 1792, 1791.1(a); *see Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 24 (2007).

Here, Wallace further alleges a breach of this implied warranty by virtue of the Defect, which allegedly renders the Ninja Blenders not "safe and reliable" and therefore not "fit for the ordinary purposes" for which they are used, Cal. Civ. Code § 1791.1(a)(2). SAC ¶ 88; *see also* Opp. at 12. Under California law, "fitness for the ordinary purpose" for which goods are used means "in safe condition and substantially free of defects." *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546 (2014); *see also Gonzales v. CarMax Auto Superstores, LLC*, 669 F. App'x 872, 873 (9th Cir. 2016) (applying standard from *Brand*). This standard does not purport "to fulfill [a] buyer's expectations, but provides instead for [a] minimum level of quality." *Brand*, 226 Cal. App. 4th at 1546.

SharkNinja first attacks the sufficiency of Wallace's pleading on the ground that the SAC does not clearly identify "why Plaintiff believes the product does not meet this standard." Mot. at 18. As discussed above, however, the SAC now clearly defines the Defect as the Stacked Blade Assembly becoming improperly dislodged while blending. *See* SAC ¶ 2. The Court has already rejected Defendant's arguments that the SAC has not sufficiently alleged the existence of this Defect. *See supra* Part IV.A.i. Thus, the SAC plausibly posits that "a blender with razor sharp blades that are not secured during operation is not fit for its ordinary purpose." Opp. at 12. That suffices to give SharkNinja notice of Wallace's claim as required by Rule 8.

In addition, SharkNinja argues that Plaintiff's allegation that "people might cut themselves while grabbing a blade assembly that has dislodged" is no more than an allegation that "consumers

18

have *the option* of using the product in an unsafe manner," Mot. at 19 (emphasis in original), which is insufficient to establish a breach of the implied warranty of merchantability, *see Birdsong*, 590 F.3d at 958. Again, the Court does not agree. Plaintiff alleges that users are forced to handle the Stacked Blade Assembly in an unsafe manner when the Defect occurs, because the safe methods of doing so are not possible. *See supra* Part IV.A.i. A defect that "creates a substantial safety hazard" can, of course, render a product unmerchantable. *Brand*, 226 Cal. App. 4th at 1547.

SharkNinja's final objection is that "[t]he mere possibility of occasional failure cannot render a product unmerchantable" and that Wallace has not alleged facts to support the inference that the alleged Defect "happen[s] often enough to matter." Mot. 19. But Wallace does not allege a single manifestation of the Defect; rather, she alleges that "on several occasions, the Stacked Blade Assembly came loose during normal blending with the lid properly secured, causing the Blade Assembly to spin unsecured around the blending pitcher." SAC ¶ 19. Although Wallace only alleges that she was cut on one occasion, *id.*, SharkNinja cites no case law for the proposition that a single instance of actual injury cannot support an inference of an ongoing and substantial safety risk. Where, as here, the defect is alleged to pose a risk of serious bodily injury, it is not reasonable to require a plaintiff to expose herself to that risk on multiple occasions. *See, e.g.*, *Brand*, 226 Cal. App. 4th at 1547 (holding that a jury "reasonably could infer a multitude" of "unsafe scenarios" that could result from "a vehicle sunroof that opens and closes on its own," though plaintiff himself only experienced one such scenario); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (no need to allege that the defective windshields have already actually caused injuries). The Court therefore finds that, construing the SAC in the light most favorable to Wallace, she has met her burden of pleading a defect that renders the Ninja Blenders unsafe and, hence, unmerchantable. The motion to dismiss Counts 3 and 4 is DENIED.

## C. UCL Claim

Count 2 is brought under the UCL, which prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Because the statute is written in the disjunctive, it prohibits three separate types of unfair

competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Plaintiff asserts a UCL claim under all three prongs. SAC ¶¶ 78-81. As set forth below, only the claim for an "unlawful" act or practice may go forward, and only to the extent it is based upon SharkNinja's alleged violation of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act.

### iv. Unlawful

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (internal quotation marks omitted). That is, a defendant violates the UCL's prohibition on "unlawful" business practices if it engages in a business practice that is forbidden by some other statute or the common law. *Zhang v. Superior Court*, 57 Cal. 4th 364, 380 (2013). Here, Plaintiff predicates her claim under the "unlawful" prong on: (a) violations of the CLRA; (b) violations of California's False Advertising Law ("FAL"); (c) violations of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act. SAC ¶ 78.

First, because the Court has found that Plaintiff's claim for violation of the CLRA was insufficiently pled, Plaintiff cannot state a claim for violation of the UCL based on that violation of the CLRA. *See Daugherty*, 144 Cal. App. 4th at 837.

Plaintiff's attempt to predicate her UCL claim on a violation of the FAL also fails. At the outset, the Court observes that Wallace did not plead an independent count for violation of the FAL or address her FAL theory in her briefing. "California's False Advertising Law makes it unlawful for any person to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012) (quoting Cal. Bus. & Prof. Code § 17500). There are at least two problems with Wallace's theory. To begin with, "many courts have held a plaintiff who asserts that a business omitted a material fact in its advertisements, labels, or literature has not stated a claim under the FAL." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016),

*aff'd*, 891 F.3d 857 (9th Cir. 2018); *see also Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all."). The viability of an FAL claim is even more suspect where, as here, the defendant "did not make any statement at all about a subject." *Hodsdon*, 162 F. Supp. 3d at 1023 (contrasting such cases with those in which "the defendant actually made a statement, but omitted information that undercuts the veracity of the statement").

Nevertheless, the Court does not foreclose Wallace's theory on this ground. That is because even if an omission can support an FAL claim, a statement is "misleading" under the FAL only if a "reasonable consumer" is "likely be deceived" by it. *Davis*, 691 F.3d at 1162. "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone." *Daugherty*, 144 Cal. App. 4th at 838); *see Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867-68 (9th Cir. 2018) (applying that principle to FAL claims). As the Court already found with regard to the CLRA claim, *see supra* Part IV.A, Wallace has failed to adequately plead a duty to disclose because she has failed to adequately plead SharkNinja's knowledge of the Defect. She therefore has not alleged a violation of the FAL, as necessary for her UCL claim.

By contrast, Plaintiff has stated a UCL claim based on violations of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act, as the Court has already found those violations to be adequately pled in Counts 3 and 4. *See supra* Part IV.B.

### v. Fraudulent

Plaintiff also asserts a UCL claim under the "fraudulent" prong of the UCL. This too fails. A "fraudulent" business act or practice within the meaning of the UCL is one that is likely to deceive members of the public. *Davis*, 691 F.3d at 1169; *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). As with claims under the FAL, "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 144 Cal. App. 4th at 838. Hence, "absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Hodsdon*, 162 F. Supp. 3d at 1026 (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007)). As a result, the Court must dismiss Wallace's "fraudulent" theory under the UCL for the same reasons

the Court dismissed Wallace's FAL theory and CLRA claim.

### vi. Unfair

Finally, the Court comes to Wallace's allegation that SharkNinja has engaged in an "unfair" act or practice within the meaning of the UCL. Although not briefed, Wallace's theory appears to be premised on the same fraudulent omission as its CLRA claim. *See* SAC ¶ 75. But again, "the failure to disclose a fact that a manufacturer does not have a duty to disclose, i.e., a defect of which it is not aware, does not constitute an unfair . . . practice." *Wilson*, 668 F.3d at 1146 n.5 (9th Cir. 2012) (citing *Daugherty*, 144 Cal. App. 4th at 838-39); *see also Hodsdon*, 891 F.3d at 867 (holding that a defendant's "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical" and thus was not "unfair"). Consequently, Wallace's failure to adequately plead SharkNinja's knowledge of the Defect is fatal to her claim of "unfairness" as well.

\* \* \*

In sum, the Court holds that Wallace has adequately pled a UCL claim predicated on violations of the Song-Beverly Consumer Warranty Act and Magnuson-Moss Act but DISMISSES WITH LEAVE TO AMEND all of Wallace's other UCL theories.

### D. Unjust Enrichment Claim

The Court turns next to Count 5, Plaintiff's claim for unjust enrichment. There has been significant confusion over whether California law provides for a standalone cause of action for "unjust enrichment. *See, e.g.*, *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007). In 2015, the Ninth Circuit indicated that, "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But in 2017, the Ninth Circuit recognized that the California Supreme Court later "clarified California law, allowing an independent claim for unjust enrichment proceed." *Bruton v. Gerber Prod. Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Casualty Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)); *see also In re Burke*, No. 1:09-BK-12469, 2019 WL 6332370, at \*3 (B.A.P. 9th Cir. Nov. 25, 2019).

California courts have described unjust enrichment as follows: "[U]njust enrichment is a

common law obligation implied by law based on the equities of a particular case and not on any contractual obligation." *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008). "Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty." *Hartford*, 61 Cal. 4th at 998. As relevant here, "traditional equitable principles" apply to claims for unjust enrichment. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996). This includes "the general principle of equity that equitable relief will not be afforded when the plaintiff's remedies at law are adequate to redress his or her injury." *Ramona Manor Convalescent Hosp. v. Care Enterprises*, 177 Cal. App. 3d 1120, 1140 (1986). Thus, an action for unjust enrichment is unavailable if plaintiff is entitled to compensatory damages. *Id.* ("[A]n action for unjust enrichment is inappropriate in the circumstances of the case at bench because Ramona can obtain full redress for its loss of profits under its action for [intentional interference with contractual relations]").

Based on the foregoing, SharkNinja moves to dismiss Count 5 on the ground that if Wallace "could prevail on any of her legal claims, those legal remedies would fully compensate her." Mot. at 20. However, the Ninth Circuit has made clear that dismissal of an unjust enrichment claim as "duplicative" of legal claims is improper on a motion to dismiss because plaintiffs are entitled to pursue alternative claims at the pleading stage. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing Fed. R. Civ. P. 8(d)(2)); *accord Villanueva v. Am. Honda Motor Co.*, No. CV191390MWFMAAX, 2019 WL 8112467, at *15 (C.D. Cal. Oct. 10, 2019) (rejecting Defendant's argument that Plaintiff's unjust enrichment claim "is duplicative because a host of potential legal remedies are available to Plaintiffs."); *Van Aldridge v. Tech. & Supply Mgmt., LLC*, No. CV 18-1081-GW(AGRX), 2018 WL 6340752, at *5 (C.D. Cal. June 7, 2018) (denying motion to dismiss unjust enrichment claim because "[t]he court cannot say with certainty at this stage whether Plaintiffs have an adequate legal remedy"). The cases SharkNinja cites that hold otherwise are older and, in light of *Astiana*, outdated.

SharkNinja has not otherwise challenged the sufficiency of the SAC's statement of an unjust enrichment claim. Accordingly, SharkNinja's motion is DENIED as to Count 5.

### E.    Prayers for Equitable Relief

SharkNinja also seeks dismissal of Wallace's prayers for equitable relief, *see* SAC ¶¶ 67, 110.  Plaintiff pleads a general prayer for "equitable relief" under the CLRA, SAC ¶ 67, and a specific prayer for "[a]n order enjoining Defendant from further deceptive advertising, sales, and other business practices with respect to its representations regarding the Ninja Stacked Blade Blenders," SAC ¶ 110.  In her Opposition, Plaintiff indicates that prayer for injunctive relief is also made under the Song-Beverly Consumer Warranty Act and the UCL.  Opp. at 13 (citing Cal. Civ. Code § 1794(a)); *see Cel-Tech*, 20 Cal. 4th at 181 (the UCL "permit[s] tribunals to enjoin on-going wrongful business conduct").

Plaintiff's general prayer for "equitable relief" in Count 1 does not survive the Court's dismissal of that claim; it has already been DISMISSED WITH LEAVE TO AMEND.

Plaintiff's specific prayer for an injunction, though made in connection with viable claims, must also be dismissed.  Although SharkNinja did not formally move to dismiss the prayer pursuant to Federal Rule of Civil Procedure 12(b)(1), SharkNinja argues that Wallace has failed to establish Article III standing to seek injunctive relief.  It is well-established that a plaintiff may seek prospective injunctive relief only if she "faces an imminent or actual threat of future harm" caused by the defendant's allegedly illegal conduct.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018), *cert. denied,* 139 S. Ct. 640 (2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992)).  That rule applies with equal force in cases of consumer fraud and breach of warranty.  *See id.* (fraudulent misrepresentation); *Luman v. Theismann*, 647 Fed. App'x 804, 807 (9th Cir. 2016) (breach of warranty).  The Court agrees with Defendant that Wallace's allegation that she "would consider" buying a Ninja blender in the future, SAC ¶ 21, without more, is insufficient to show a likelihood of future injury.  Mot. at 20.  As the Ninth Circuit has explained, a "'some day' intention—without any description of concrete plans, or indeed even any specification of when the some day will be—does not support a finding of the 'actual or imminent' injury that' Article III requires."  *Lanovaz v. Twinings N. Am., Inc.*, 726 Fed. App'x 590, 591 (9th Cir. 2018) (quoting *Lujan*, 504 U.S. at 564 (alterations omitted)).  Wallace's allegation is no more than "a profession of an intent" which—like "Lanovaz's statement that she

would 'consider buying' Twinings products"—does not establish standing for injunctive relief.

*Lanovaz*, 726 Fed. App'x at 591; *see also Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF,

2018 WL 3023493, at *7 (N.D. Cal. June 18, 2018).

Plaintiff's prayer for injunctive relief is DISMISSED WITH LEAVE TO AMEND.

### F.   Nationwide Class Allegations

Last, Defendant asks the Court to "reject Plaintiff's attempt to assert any surviving claims

on behalf of a 'nationwide' class." Mot. at 20.  In support of this request, Defendant cite *Mazza v.*

*Am. Honda Motor Co.*, in which the Ninth Circuit rejected a nationwide class because "variances

in state law overwhelm common issues and preclude predominance for a single nationwide class."

666 F.3d 581, 596 (9th Cir. 2012).  As the court explained, "California law may only be used on a

classwide basis if the interests of other states are not found to outweigh California's interest in

having its law applied." *Id.* at 590.  The *Mazza* court then went on to conduct a detailed choice of

law analysis, including examining the differences between California's consumer protection laws

and those of other states in which class members bought cars.  *Id.* at 590-94.  It ultimately

concluded that "under the facts and circumstances of [that] case, . . . each class member's

consumer protection claim should be governed by the consumer protection laws of the jurisdiction

in which the transaction took place." *Id.* at 594.

The Court agrees that *Mazza* is binding, and that choice of law issues might ultimately

preclude a nationwide class.  But as *Mazza* itself demonstrates, a detailed and fact-intensive

inquiry is necessary to determine the substantive law applicable to class members' claims.  The

Court is also mindful that dismissing or striking class allegations at the pleading stage is rare.  *See,*

*e.g.*, *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).

Accordingly, the Court follows many other district courts in concluding that Defendant's

challenge is better suited for the class certification stage.  *See Fitzhenry-Russell v. Coca-Cola Co.*,

No. 5:17-CV-00603-EJD, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017); *Clancy v. The*

*Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *Werdebaugh v. Blue Diamond Growers*,

No. 12-CV-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013).  The motion to

dismiss nationwide class allegations is DENIED.

## V. ORDER

For the foregoing reasons, the Motion to Dismiss the Second Amended Complaint is GRANTED IN PART and DENIED IN PART. The Court rules on SharkNinja's requests as follows:

- The motion to dismiss Count 1 is GRANTED WITH LEAVE TO AMEND.

- The motion to dismiss Counts 3 and 4 is DENIED.

- The motion to dismiss Count 2 is DENIED to the extent it is premised on violations of the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act and otherwise GRANTED WITH LEAVE TO AMEND.

- The motion to dismiss Count 5 is DENIED.

- The motion to dismiss the prayers for equitable relief is GRANTED WITH LEAVE TO AMEND.

- The motion to dismiss the nationwide class allegations is DENIED.

Any amended complaint is due by April 3, 2020. Plaintiff is directed to file a redlined complaint as an attachment to its amended complaint. Leave to amend is restricted to the defects discussed in this Order and in SharkNinja's motion; Plaintiff may not add new parties or claims without obtaining prior express leave of the Court.

**IT IS SO ORDERED.**

Dated: March 9, 2020

_____

BETH LABSON FREEMAN
United States District Judge