UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KRYSTAL WALLACE, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SHARKNINJA OPERATING, LLC, a Massachusetts limited liability company,<br><br>Defendant. | Case No.  18-cv-05221-BLF<br><br>**ORDER GRANTING IN PART, WITHOUT LEAVE TO AMEND, AND DENYING IN PART MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>[Re:  ECF 69] |

Defendant SharkNinja Operating, LLC ("SharkNinja") has filed a motion to dismiss in part the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is opposed by Plaintiff Krystal Wallace ("Wallace").  The Court previously determined that the motion is appropriate for decision without oral argument and vacated the hearing.  *See* Order Vacating Hearing, ECF 79.

For the reasons discussed below, the motion is GRANTED IN PART, WITHOUT LEAVE TO AMEND, and DENIED IN PART.

**I.   BACKGROUND**

This putative class action arises from an alleged design defect in blenders manufactured and distributed by SharkNinja.  The blenders in question have a unique "Stacked Blade Assembly" consisting of multiple sharp blades mounted at different heights inside the blender pitcher.  The Stacked Blade Assembly is separate from, and does not lock to, the blender base, pitcher, or lid. Wallace's definition of the alleged defect in this blender design has evolved over the life of this lawsuit, as described below.

Original Compliant and First Amended Complaint

Wallace alleged in both her original complaint and first amended complaint ("FAC") that the blenders are defective because the Stacked Blade Assembly does not lock into place, such that consumers are at an increased risks of lacerations during use and cleaning of the blender. *See* Compl. ¶ 2, ECF 1; FAC ¶ 2, ECF 20. There is no dispute that this is by design – the Stacked Blade Assembly is separate from, and does not lock to, the blender base, pitcher, or lid. *See* Compl. ¶¶ 3-4; FAC ¶¶ 3-4.

SharkNinja successfully moved to dismiss the FAC under Rule 12(b)(6), asserting that Wallace cannot maintain a lawsuit simply because she would prefer a different design in which the blade assembly locks into place. *See* Mot. to Dismiss FAC, ECF 23. At the motion hearing, the Court advised Wallace that more specificity was required as to the nature of the defect. The Court also noted that the FAC excluded from the class anyone who suffered personal injuries from the blender, but it also alleged that Wallace was cut by the blender. The Court made an oral ruling dismissing the FAC in its entirety with leave to amend, and issued a brief written order. *See* Order Memorializing Oral Ruling, ECF 47.

Second Amended Complaint

Wallace filed a second amended complaint ("SAC") refining her defect allegations as follows: "the Ninja Stacked Blade Blenders contain one or more design defects whereby the Stacked Blade Assembly improperly *dislodges while blending* (the "Stacked Blade Defect" or "Defect"). SAC ¶ 2 (emphasis added), ECF 45. Wallace alleged that "the Stacked Blade Defect can result in the Stacked Blade Assembly cracking, shattering, or otherwise damaging the blending pitcher when it *detaches while blending*." *Id.* (emphasis added).

SharkNinja again moved to dismiss under Rule 12(b)(6), but this time with only limited success. The Court determined that although "[e]arlier versions of Wallace's complaint were not clear as to what constituted the alleged defect," that problem had "been remedied." *See* Order Granting in Part Mot. to Dismiss SAC at 9, ECF 67. The Court found that Wallace had clarified that she was not alleging merely that a locked blade assembly would be a safer alternative to the subject blenders' design, but was alleging that the Stacked Blade Assembly dislodges in an unsafe

2

manner during normal operation of the blenders. *See id.* at 10. The Court rejected SharkNinja's argument that Wallace must identify the cause of the defect, stating "Wallace alleges that the mechanism holding the Stacked Blade Assembly in place during blending is flawed, resulting in the Stacked Blade Assembly coming dislodged." *Id*. at 11. The Court concluded that, "[h]aving pointed SharkNinja to the defective component of the blender, Wallace need not plead whether the shaft is not quite long enough, or the materials from which [the shaft is] made were not strong enough, or any particular cause of the defect." *Id*. (quotation marks omitted).

In light of Wallace's clarification regarding the alleged defect, the Court found that most claims in the SAC were adequately alleged. The Court denied SharkNinja's motion to dismiss Claim 2 for violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, to the extent that claim is brought under the unlawful prong; Claim 3 for breach of implied warranty under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*; Claim 4 for breach of implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*; and Claim 5 for unjust enrichment. *See* Order Granting in Part Mot. to Dismiss SAC at 26, ECF 67.

The Court found the SAC lacking, however, with respect to Claim 1 for violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; Claim 2 for violation of the UCL to the extent brought under the fraud and unfair prongs; and the claim for injunctive relief. *See* Order Granting in Part Mot. to Dismiss SAC at 26. The Court dismissed Claim 1, portions of Claim 2, and the claim for injunctive relief, with leave to amend. *See id.*

Third Amended Complaint

The operative third amended complaint ("TAC") reiterates the definition of the defect set forth in the SAC: "the Ninja Stacked Blade Blenders contain one or more design defects whereby the Stacked Blade Assembly improperly dislodges while blending (the "Stacked Blade Defect" or "Defect")." TAC ¶ 2, ECF 68. The TAC also repeats the allegation that "the Stacked Blade Defect can result in the Stacked Blade Assembly cracking, shattering, or otherwise damaging the blending pitcher when it detaches while blending." *Id.* However, the TAC contains the following new allegations regarding the cause of the Stacked Blade Defect:

> On information and belief, this defect occurs as a result of over-pressurization in the pitcher while blending thicker materials, such as ice or frozen fruit, that results in the blade assembly pushing the lid up such that the stacked blade assembly dislodges and/or the pitcher exploding from the pressure. This issue is exacerbated by SharkNinja's use of plastic components, including the shaft of the Stacked Blade Assembly, the entirety of the pitcher and lid, and the blending gears, which wear down quickly. Additionally, because the Stacked Blade Assembly is not locked in place while blending, larger particles such as ice or frozen fruit force the Stacked Blade Assembly to move during use and cause severe stress cracks around the base of the pitcher, as evidenced by consumer complaints, some of which are copied below.

TAC ¶ 31, ECF 68. Wallace also adds new allegations of customer complaints regarding the defect. *See* TAC ¶¶ 39, 41-42.

SharkNinja argues that the new allegations in the TAC do not cure the pleading deficiencies that resulted in the Court's earlier dismissal of the CLRA claim, portions of the UCL claim, and the claim for injunctive relief. Wallace asserts that the CLRA and UCL claims are pleaded with adequate specificity in the TAC. She does not address the claim for injunctive relief.

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court is limited to the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## III.   DISCUSSION

SharkNinja challenges five aspects of the TAC. First, SharkNinja contends that Wallace

4

has waived or abandoned any claims based on a theory of fraudulent misrepresentation, but the TAC nonetheless refers to "misrepresentations." SharkNinja asks the Court to dismiss any misrepresentation-based claims. Second, SharkNinja seeks dismissal of the fraudulent omission-based claims brought under the CLRA and the fraud prong of the UCL. SharkNinja asserts that Wallace still has not pled that SharkNinja knew of the Stacked Blade Defect prior to Wallace's purchase of the blender. Third, SharkNinja seeks dismissal of the claim under the unfair prong of the UCL. Fourth, SharkNinja seeks dismissal of the claim for injunctive relief, pointing out that Wallace has not made any changes to that claim. Fifth, SharkNinja asks the Court to dismiss or strike numerous allegations on the grounds that they are either "irrelevant holdovers" from prior pleadings or "improper attempts to exceed the scope of the Court's order granting leave to amend." Mot. to Dismiss at 1, ECF 69.

In opposition, Wallace contends that her allegations regarding SharkNinja's misrepresentations give context to her fraudulent omission-based claims. She also asserts that she has pled SharkNinja's pre-sale knowledge of the Stacked Blade Defect, such that her claims under the CLRA and fraud prong of the UCL should go forward. Wallace additionally argues that she has made out a claim under the unfair prong of the UCL. She does not respond to SharkNinja's motion to dismiss her claim for injunctive relief. Finally, Wallace disputes SharkNinja's characterization of certain allegations in the TAC as irrelevant or improper.

### A. Misrepresentation-Based Claims

In its prior ruling on SharkNinja's motion to dismiss the SAC, the Court noted that Wallace's CLRA claim was based on a theory of fraudulent omission rather than fraudulent misrepresentation. *See* Order Granting in Part Mot. to Dismiss SAC at 8-9, ECF 67. The Court cited California law for the proposition that "[a]n actionable fraudulent omission is either an omission that is contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *See id.* at 8 (quotation marks and citation omitted). The Court determined that Wallace was proceeding only under the latter theory, that is, that SharkNinja had a duty to disclose the Stacked Blade Defect but failed to do so. *See id.* at 8-9. SharkNinja asserts that Wallace nonetheless includes several paragraphs in the TAC alleging that

SharkNinja made affirmative misrepresentations. SharkNinja seeks dismissal of any claim based on misrepresentations rather than omissions.

In response, Wallace states that she "has previously conceded that she is only pursuing a fraudulent omission theory of liability." Opp. at 2, ECF 73. She contends that the challenged allegations regarding SharkNinja's representations are relevant to her fraudulent omission theory. She asserts that SharkNinja was obligated to disclose the Stacked Blade Defect both because it was a known safety hazard *and* because it was contrary to representations actually made by SharkNinja. Under California law, a duty to disclose may arise "when the defendant makes partial representations but also suppresses some material facts." *Bigler-Engler v. Breg, Inc*., 7 Cal. App. 5th 276, 311 (2017). As SharkNinja points out in its reply, however, this Court has construed Wallace's CLRA claim narrowly to encompass only a theory that SharkNinja had an obligation to disclose a known safety hazard but failed to make such a disclosure. *See* Order Granting in Part Mot. to Dismiss SAC at 8-9. In reviewing the briefing on SharkNinja's prior motion to dismiss the SAC, as well as this Court's prior order, the Court concludes that Wallace previously abandoned any fraudulent omission claim based on SharkNinja's partial representations.

Moreover, Wallace has failed to identify any representations in the TAC that are contrary to the existence of the Stacked Blade Defect. She points to paragraph 17, which alleges that "Plaintiff further relied on Defendant's representation that the Ninja Blender's 'Total Crushing Pitcher pulverizes ice to snow in seconds for creamy frozen drinks and smoothies,' which indicated to Plaintiff that the pitcher and blades were secured together as one unit." TAC ¶ 17. The representation that the blender has the "total crushing" power to pulverize ice to snow says nothing about the blender's design. No reasonable consumer would believe that this representation indicates that the pitcher and blades are secured together as one unit. *See Becerra v. Dr. Pepper/Seven Up, Inc*., 945 F.3d 1225, 1229 (9th Cir. 2019) ("[N]o reasonable consumer would assume that Diet Dr. Pepper's use of the term 'diet' promises weight loss or management.").

Accordingly, the Court finds that Wallace has abandoned, or failed to allege facts to support, any claims based on a theory of fraudulent misrepresentation or on a theory of fraudulent

6

omission grounded in partial representations. The Court GRANTS SharkNinja's motion to dismiss any claims based on alleged misrepresentations.

### B.  Fraudulent Omission-Based Claims under CLRA and UCL Fraud Prong

SharkNinja next asks the Court to dismiss Wallace's fraudulent omission-based claims with prejudice, asserting that she again has failed to plead SharkNinja's pre-sale knowledge of the Stacked Blade Defect. The fraudulent omission-based claims – the CLRA claim and the UCL claim based on the fraud prong – are discussed below.

#### 1.  CLRA Claim (Claim 1)

In evaluating Claim 1 under the CLRA in its prior dismissal order, the Court held that Wallace must plead the following elements: (1) the existence of the Defect; (2) that the Defect posed an "unreasonable safety hazard"; and (3) SharkNinja's knowledge of the Defect prior to Wallace's purchase. *See* Order Granting in Part Mot. to Dismiss SAC at 9, ECF 67. The Court determined that Wallace had pled the first two elements, but not the third. *See id.* at 9-17.

With respect to the third element, SharkNinja's knowledge of the Stacked Blade Defect, the SAC alleged on information and belief that "since at least 2012, SharkNinja knew about the Stacked Blade Defect through sources not available to consumers, including pre-release testing data, early consumer complaints, high failure rates and replacement part sales data, and other internal sources, including warranty data and private messages via social media and call places to customer support." SAC ¶ 38. The Court found those allegations inadequate to show knowledge, as they were merely conclusory. *See* Order Granting in Part Mot. to Dismiss SAC at 13-14. The Court determined that the only facts in the SAC relevant to SharkNinja's pre-sale knowledge were customer complaints. *See* Order Granting in Part Mot. to Dismiss SAC at 13-14.

Knowledge may be inferred from customer complaints under some circumstances. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). In *Williams*, the Ninth Circuit reversed the district court's dismissal of consumer fraud claims where knowledge was based on customer complaints, finding allegations of a "unusually high volume of complaints specific to" the alleged defect, along with a description of the defendants' consumer response system, sufficient to show the defendants' knowledge of the defect for pleading purposes. *See id.*

7

*Williams* acknowledged that the plaintiffs had not alleged specific names and dates with respect to the customer complaints, noting that some district courts have dismissed consumer fraud claims as speculative absent specific allegations that customer complaints were made pre-sale and that the defendant actually received the complaints. *See id.* at 1027. However, *Williams* distinguished those decisions from the case before it, finding adequate plaintiffs' allegations of the approximate timing of the customer complaints and explanation that the defendants maintained "a private internal complaint system" such that the details of the complaint were not available to the public. *Id.* at 1027-28.

Applying *Williams* to the SAC, this Court found that the customer complaints upon which Wallace relied either did not describe the Stacked Blade Defect or did not involve the Ninja Professional Blender model number BL660 purchased by Wallace. *See* Order Granting in Part Mot. to Dismiss SAC at 16. The Court indicated that Wallace could have relied on customer complaints regarding other models if she had alleged that they were sufficiently similar to the purchased BL660 model. *Id*. The Court found Wallace had not alleged such similarity or any other facts from which SharkNinja's pre-sale knowledge could be inferred. *Id*. at 16-17.

SharkNinja contends that the TAC has not cured these pleading deficiencies. SharkNinja first addresses Wallace's new allegation that "unbeknownst to consumers, sometime between January and June 2018, SharkNinja modified the Stacked Blade Assembly to include a metal tip as opposed to a plastic tip where the Stacked Blade Assembly supposedly 'connects' with the lid." TAC ¶ 38. This allegation apparently is intended to suggest that SharkNinja recognized and corrected a design defect relating to the plastic tip. SharkNinja argues that the allegation regarding the switch to a metal tip in 2018 is implausible in light of other allegations in the TAC suggesting earlier versions of the blender had a metal tip. SharkNinja also points out that it is unclear whether the asserted design modification occurred before Wallace's March 2018 purchase, because the alleged time frame for the asserted modification runs from January to June 2018. After completion of the briefing on the present motion to dismiss, Wallace withdrew the allegation regarding the asserted design modification. *See* Stipulation, ECF 78; Def.'s RJN, ECF 80. She filed a stipulation stating, "Plaintiff, without averring as to or denying the accuracy of such

8

statement, hereby withdraws the following allegation at paragraph 38 of her Third Amended Complaint (Rec. Doc. 68): 'In fact, unbeknownst to consumers, sometime between January and June 2018, SharkNinja modified the Stacked Blade Assembly to include a metal tip as opposed to a plastic tip where the Stacked Blade Assembly supposedly 'connects' with the lid.'" *Id.* The Court therefore has not considered that allegation.

SharkNinja next challenges Wallace's new allegation that "SharkNinja heavily relies on its social media platforms and relationships with its authorized retailers to provide feedback on consumer experiences." TAC ¶ 39. Wallace alleges that SharkNinja monitors its own social media accounts and the websites of retailers, including Target and Amazon.com, and responds to customers' questions and complaints. *See id.* The TAC contains screenshots of several customer complaints posted on SharkNinja's Facebook page and on the websites of Target and Amazon.com as evidence that SharkNinja had pre-sale knowledge of the Stacked Blade Defect. *See* TAC ¶¶ 39, 42. SharkNinja argues that these complaints were posted after Wallace purchased her blender in March 2018, do not relate to the Stacked Blade Assembly dislodging during operation, and/or do not relate to the BL660 model purchased by Wallace.

Taking these arguments in reverse order, Wallace alleges on information and belief that "all Ninja Stacked Blade Blenders utilize the same or substantially identical Stacked Blade Assemblies and the Stacked Blade Defect is the same for all Ninja Stacked Blade Blenders." TAC ¶ 33. SharkNinja points out that the same allegation was included in the SAC and, apparently, found by the Court to be inadequate to allege similarity between SharkNinja's products. *Compare* TAC ¶ 33 *with* SAC ¶ 33. However, the Court did not expressly address paragraph 33 or the allegation of similarity contained therein when it ruled on the SAC. *See* Order Granting in Part Mot. to Dismiss SAC at 16. Considering the matter now, the Court finds Wallace's allegation in paragraph 33 sufficient to show, for pleading purposes, that the Stacked Blade Assembly and Stacked Blade Defect are the same across all Ninja Stacked Blade Blenders. The Court therefore considers all customer complaints regarding Stacked Blade blenders regardless of model number. *See Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) ("VW argues that the Court should only consider complaints made on

2013 Volkswagen Jettas, the same vehicle purchased by Deras, but the Court considers all of the complaints based on Deras's allegation that all Class Vehicles had sunroofs of similar design."). SharkNinja may, of course, argue on a more developed record that Wallace's allegation regarding the similarity between models is untrue.

With respect to the subject matter of the complaints, SharkNinja asserts that the alleged defect is limited to the dislodging of the Stacked Blade Assembly during blending, and therefore that complaints regarding other defects such as exploding blenders are irrelevant. As discussed above, Wallace has broadened her definition of the Stacked Blade Defect to explain that the dislodging of the Stacked Blade Assembly is caused by over-pressurization in the pitcher while blending thicker materials, such as ice or frozen fruit. *See* TAC ¶ 31. Wallace now alleges that the over-pressurization can cause the Stack Blade Assembly to dislodge, the blender to explode, and stress cracks around the base of the pitcher. *See id.* SharkNinja argues that the Court did not grant Wallace leave to amend the definition of the Stacked Blade Defect, and it asks the Court to strike those allegations. Wallace responds that she expanded on the definition of the Stacked Blade Defect to show that customer complaints disregarded by the Court in its prior order actually do relate to the defect at issue in this case.

It is a close call whether Wallace's additional allegations regarding the defect are outside the scope of the leave to amend granted in the Court's prior order. The additional allegations do not add new parties or claims, and they do relate to the viability of Wallace's fraudulent omission-based claims, which she was granted leave to amend. However, the new allegations also change the nature of the defect previously alleged in the SAC and accepted by the Court. After careful consideration, the Court concludes that the new allegations in paragraph 31 are within the scope of the leave to amend previously granted. Even if the Court were to find to the contrary, Wallace would be entitled to file a motion for leave to amend under Federal Rule of Civil Procedure 15(a) to add the new defect allegations. Given the procedural posture of the case and the liberal standard for amendment under Rule 15(a)(2), such motion almost certainly would be granted. Accordingly, there would be little point in granting SharkNinja's request to strike the allegations from the TAC. The Court continues its analysis based on the expanded defect definition.

The Court finds that the TAC alleges multiple customer complaints about the BL660 model or other models, addressing the Stacked Blade Defect as defined in the TAC, that pre-date Wallace's March 2018 purchase of her blender. The relevant customer complaints include several filed with the Consumer Product Safety Commission ("CPSC") that previously were alleged in the SAC but not considered by the Court in its prior dismissal order because they did not relate specifically to the BL660 model or the dislodging of the Stacked Blade Assembly. Among the customer complaints allegedly made to the CPSC are: 2012 complaint that the blender cracked and popped during blending, sending smoothie mixture all over, TAC ¶ 36.a; 2013 complaint that the blender blade flew off the axis during use, TAC ¶ 36.c; 2015 complaint that the blender exploded during use, TAC ¶ 36.d; 2015 complaint that the top of the blender and sharp blades flew off the blender and went 12 feet, TAC ¶ 36.e; 2015 complaint that the blender shattered during use, TAC ¶ 36.h; and February 2018 complaint that the blender exploded during use, TAC ¶ 36.n. Among the customer complaints posted online are: 2015 complaint that blender exploded and sent blade flying, TAC ¶ 39; 2017 complaint that the blade went crazy and sliced the pitcher, TAC ¶ 42; 2017 complaint that blade came off the assembly into the user's smoothie, TAC ¶ 42; 2017 complaint that the blender broke during use, TAC ¶ 42; 2015 complaint that the blade scraped the inside of the pitcher, TAC ¶ 42; 2017 complaint that blender pitcher cracked, and the replacement cracked, TAC ¶ 42; 2017 complaint that black plastic from the inside of the blender was shredded into a smoothie, TAC ¶ 42; and 2017 complaint that the blender exploded during use, TAC ¶ 42. Most of the online complaints show online responses from SharkNinja, and several of the responses direct the customer to communicate with SharkNinja via private message. *See* TAC ¶ 42. Wallace alleges that SharkNinja's practices of requesting private messages, and of removing older posts, prevent customers from knowing about the defect. *See* TAC ¶ 39.

The Court finds that these allegations are adequate to satisfy the pre-sale knowledge pleading requirement for a CLRA claim. In making this determination, the Court is guided by the Ninth Circuit's comments in *Williams* when reversing the district court's dismissal of consumer fraud claims for failure to allege pre-sale knowledge. The Ninth Circuit stated that, "Importantly, [the defendants] have filed a motion to dismiss, not a motion for summary judgment. Discovery

11

has not yet occurred." *Williams*, 851 F.3d at 1028. The court went on to say that "[p]re-discovery, when the court must take [the plaintiffs'] factual allegations as true, [the plaintiffs'] description of a separate consumer response system dedicated to handling an unusually high volume of complaints specific to" the alleged defect supported the plaintiffs' claim of presale knowledge. *Id*. This Court likewise must credit Wallace's factual allegations of numerous pre-sale customer complaints, SharkNinja's responses to complaints, SharkNinja's actions in moving conversations regarding complaints offline into private messages, and SharkNinja's removal of older complaint posts. The Court concludes that these factual allegations give rise to a reasonable inference that SharkNinja knew of the Stacked Blade Defect prior to Wallace's March 2018 purchase.

The Court has considered the cases cited by SharkNinja, and finds them to be factually distinguishable from the present case. In *Espineli v. Toyota Motor Sales, Inc., USA,* the plaintiffs alleged thirteen customer complaints about a claimed defect in Lexus vehicles, but they did not allege "how or where these complaints were made, or otherwise allege how defendants could have been aware of them." *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00698-KJM-CKD, 2019 WL 2249605, at *6-7 (E.D. Cal. May 24, 2019). In the present case, Wallace has alleged the dates and other specifics of the customer complaints, and other facts showing SharkNinja's knowledge of the complaints prior to Wallace's purchase of her blender.

In *Deras v. Volkswagen Grp. of Am., Inc*., the plaintiff alleged fifty-six customer complaints over a seven-year period in which the defendant, VW, sold "hundreds of thousands of vehicles." *Deras*, 2018 WL 2267448, at *4. The district court held the complaints were so few in number compared to the volume of total sales that it could not be inferred that the complaints would have put VW on notice of the defect. *See id.* The district court found that the plaintiff's allegations regarding VW's internal monitoring of defects was insufficient because the plaintiff did "not provide any allegations regarding the method by which complaints were recorded and transmitted to management, or otherwise reviewed or received." *See id.* at *5. These facts are distinguishable from those in the present case, in which there is no suggestion that SharkNinja sold hundreds of thousands of blenders, or so many that the alleged complaints would not catch its

12

notice; and Wallace has alleged specific facts showing how the complaints were made and that SharkNinja received notice of them.

In *Sloan v. General Motors LLC*, the district court determined that eighty-one customer complaints were not sufficient to establish GM's pre-sale knowledge of an alleged oil-ring defect, where "*none* of the complaints explicitly states that the cause of the excessive oil consumption was the Low-Tension Oil Ring Defect," and most of the complaints were posted after the marketing and sales of the subject vehicles had ended. *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017). In the present case, Wallace has alleged complaints regarding the alleged defect that were received by SharkNinja prior to the date Wallace purchased her blender.

The Court emphasizes that its only task at this stage in the proceedings is to determine whether Wallace has alleged a plausible CLRA claim based upon a fraudulent omission theory. The Court previously dismissed the CLRA claim on the sole basis that Wallace had not alleged SharkNinja's pre-sale notice of the defect. The Court concludes that Wallace has cured that pleading deficiency by adding factual allegations sufficient to give rise to a reasonable inference that SharkNinja had notice of the asserted defect prior to Wallace's purchase of her blender.

Accordingly, the motion to dismiss the CLRA claim is DENIED.

### 2. UCL Fraud Prong Claim (Claim 2)

The Court previously dismissed the UCL claim asserted under the fraud prong on the basis that it was grounded in the same fraudulent omission theory underlying its CLRA claim, which the Court found to be inadequately alleged in the SAC. *See* Order Granting in Part Mot. to Dismiss SAC at 21-22. SharkNinja contends that the fraud prong claim fails once again because Wallace has not cured this pleading deficiency. As discussed above, however, the Court concludes that Wallace has stated a claim under the CLRA based on a fraudulent omission theory. Thus, SharkNinja's motion to dismiss the fraud prong claim is without merit.

Accordingly, the motion to dismiss the UCL fraud prong claim is DENIED.

### C. Claim under UCL Unfair Prong (Claim 2)

The Court previously dismissed the UCL claim to the extent it is asserted under the unfair

prong, holding that "Wallace's theory appears to be premised on the same fraudulent omission as its CLRA claim." *See* Order Granting in Part Mot. to Dismiss SAC at 22. SharkNinja seeks dismissal of the unfair prong claim on the ground that Wallace has not cured the deficiencies in her fraudulent omission theory. The Court has concluded that Wallace adequately has alleged that theory in the TAC.

Accordingly, the motion to dismiss the UCL unfair prong claim is DENIED.

### D. Claim for Injunctive Relief

The Court previously dismissed Wallace's claim for injunctive relief, with leave to amend, on the basis that she had not alleged a likelihood of future injury, a requirement for obtaining an injunction. *See* Order Granting in Part Mot. to Dismiss SAC at 24-25. SharkNinja moves to dismiss the claim once again, pointing out that the TAC contains no new allegations regarding the likelihood of future injury. Wallace has not responded to this aspect of SharkNinja's motion. The Court therefore finds that Wallace has waived her claim for injunctive relief. *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 801-02 (N.D. Cal. 2019) ("Therefore, because Plaintiff has failed to respond to Apple's arguments, the Court GRANTS Apple's motion to dismiss the breach of the implied warranty of merchantability claim with prejudice because Plaintiff has waived the issue.").

The motion to dismiss Wallace's claim for injunctive relief is GRANTED WITHOUT LEAVE TO AMEND.

### E. Particular Allegations

Finally, SharkNinja asks the Court to strike certain allegations that SharkNinja contends exceed the scope of leave to amend or bear no relevance to Wallace's claims. Wallace responds that the allegations in question are properly included in the TAC and should not be stricken.

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). A court should not strike allegations supplying background or historical material unless it is unduly prejudicial to the opponent. *See*

14

*LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Indeed, if there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015). A court should view the pleading in the light most favorable to the nonmoving party. *Id.* Whether to grant a motion to strike lies within the sound discretion of the district court. *Id.*

SharkNinja contends that the new allegations in paragraph 31 that expand the definition of the defect should be stricken as outside the scope of the leave to amend granted by the Court upon dismissal of the SAC. That argument has been considered and rejected, above.

Next, SharkNinja contends that allegations regarding the 2015 recall and consumer complaints are not relevant. The basis for this contention seems to be SharkNinja's position that the fraudulent-omission based claims are not viable. However, for the reasons discussed above, the Court takes a different view. The Court concludes that the allegations in question are relevant to Wallace's fraudulent omission-based claims and/or provide relevant background to her claims.

The motion to strike is DENIED.

## IV. ORDER

(1) SharkNinja's motion to dismiss is GRANTED IN PART, WITHOUT LEAVE TO AMEND, as to any claims based on a theory of fraudulent misrepresentation and as to the claim for injunctive relief;

(2) The motion to dismiss is DENIED as to Claim 1 for violation of the CLRA and Claim 2 for violation of the UCL;

(3) SharkNinja SHALL file an answer to the TAC on or before December 7, 2020; and

(4) This order terminates ECF 69.

Dated: November 23, 2020

_____
BETH LABSON FREEMAN
United States District Judge

15